```
                   UNITED STATES DISTRICT COURT
                   EASTERN DISTRICT OF LOUISIANA


DARRELL LONG                                CIVIL ACTION

VERSUS                                      NO: 15-2213

PATTON HOSPITALITY                          SECTION: "J"(5)
MANAGEMENT, LLC ET AL.
```

## ORDER & REASONS

Before the Court is a *Motion to Dismiss on Grounds of Lack of Personal Jurisdiction and Improper Venue, or Alternatively to Transfer This Civil Action on Grounds of Forum Non Conveniens* **(Rec. Doc. 4)** filed by Defendant Patton Hospitality Management, Inc., a *Motion to Reset Hearing on Patton's Motion to Dismiss on Grounds of Lack of Personal Jurisdiction and Improper Venue, or Alternatively to Transfer This Civil Action on Grounds of Forum Non Conveniens, and Request for Court to Take Judicial Notice of Adjudicative Facts* **(Rec. Doc. 13)** filed by Patton, and an opposition thereto (Rec. Doc. 15) filed by Plaintiff, Darrell Long. Having considered the motions and legal memoranda, the record, and the applicable law, the Court finds that the motions should be **GRANTED** for the reasons set forth more fully below.

**FACTS AND PROCEDURAL BACKGROUND**

This is a civil action for damages in which the Plaintiff, Darrell Long, alleges that he was injured on February 10, 2015, when he slipped and fell as he exited a steam room at a condominium premises managed by Patton Hospitality Management, Inc. in Orange Beach, Alabama. (Rec. Doc. 1, at 2.) On June 18, 2015, Plaintiff filed suit against Patton and Ironshore Specialty Insurance Company, a foreign insurance company alleged to have a policy of liability insurance providing coverage to Patton. *Id.* at 2-4. Plaintiff claims that his injuries were caused by the negligence of Patton and its agents, servants, or employees. *Id.* at 4. Specifically, Plaintiff alleges that Patton was negligent in creating or allowing an unreasonably dangerous condition to exist on the premises; failing to warn Plaintiff of the unreasonably dangerous condition; failing to lay mats down on the flooring leading from the wet area so as to provide safe access to and from the wet area; and failing to properly supervise and instruct its employees to discover, report, and remedy defects in the premises. *Id.*

Patton filed the instant *Motion to Dismiss on Grounds of Lack of Personal Jurisdiction and Improper Venue, or Alternatively to Transfer This Civil Action on Grounds of Forum Non Conveniens* **(Rec. Doc. 4)** on September 17, 2015. The motion was initially set for submission on October 7, 2015; however, the Court granted

2

Plaintiff's unopposed motion to continue the submission date so that Plaintiff could conduct limited jurisdictional discovery. (Rec. Doc. 6.) On January 29, 2016, Patton filed the instant *Motion to Reset Hearing on Patton's Motion to Dismiss on Grounds of Lack of Personal Jurisdiction and Improper Venue, or Alternatively to Transfer This Civil Action on Grounds of Forum Non Conveniens, and Request for Court to Take Judicial Notice of Adjudicative Facts* **(Rec. Doc. 13)**, seeking to reset its original motion for submission now that Plaintiff had conducted jurisdictional discovery. Plaintiff opposed Patton's motions on February 16, 2016. The Court now considers the motions on the briefs.

## PARTIES' ARGUMENTS

Patton contends that this Court lacks personal jurisdiction over it in this civil action and that venue is improper. (Rec. Doc. 4-1, at 1.) Patton asserts that it is a limited liability company incorporated in Nevada, having its principal place of business in Carolina, and its sole member is also domiciled outside of Louisiana. *Id.* Patton attaches an affidavit of its Chief Operating Officer, Scott Styron, which states that Patton's business involves managing approximately thirty resort properties in nine states, one of which is Louisiana, and the Caribbean. (Rec. Doc. 4-2, at 1.) However, Styron states that the Louisiana property forms "only a very small fraction of its total business." *Id.* at 2. In addition, Styron states that Patton does not have any

3

directors or officers in Louisiana, has never had any board meetings in Louisiana, does not share employees with any companies in Louisiana, and has never consented to being sued in Louisiana for claims arising in other states. *Id.* Additionally, in its second motion, Patton requests the Court to take judicial notice of the publicly available information on the official Louisiana, Nevada, and North Carolina state websites, which shows that Patton and its sole member are both incorporated in Nevada, have their principal places of business in North Carolina, and none of their officers reside in Louisiana. (Rec. Doc. 13, at 2.)

Patton argues that Plaintiff has not met his burden of making a prima facie showing that Patton is subject to personal jurisdiction in this district with respect to this civil action. (Rec. Doc. 4-1, at 10.) Patton claims that this civil action arises out of an allegedly dangerous condition of a premises located entirely outside of this forum, and out of allegedly negligent conduct of persons working there. *Id.* Patton argues that the Complaint does not allege any connection between this civil action and Louisiana other than that Patton appointed an agent for service of process in Baton Rouge, Louisiana, and that Plaintiff is domiciled in this district. *Id.* Plaintiff's allegations, according to Patton, are insufficient to subject Patton to personal jurisdiction in this district with respect to Plaintiff's claims. *Id.*

4

Patton also contends that venue is improper in this district because Patton does not reside in Louisiana and a substantial part of the events or omissions giving rise to the claim occurred in Alabama. *Id.* at 11. In the alternative, if Patton's motion to dismiss is denied, Patton argues that the Court should transfer this civil action to the United States District Court for the Southern District of Alabama, for the convenience of the parties and witnesses and in the interest of justice. *Id.* at 11-12. Patton argues that the Southern District of Alabama is where the accident is alleged to have occurred and where the vast majority of the potential witnesses are reasonably anticipated to be located. *Id.* at 14. Further, Patton argues that the Southern District of Alabama would have a greater interest in regulating the use, management, and any resulting liability involving the Alabama property at issue, and the alternative forum would be more efficient with respect to the time and costs associated with the parties' retention of experts to inspect the premises in Alabama and provide testimony. *Id.* Lastly, Patton argues that the Southern District of Alabama would be most familiar with Alabama tort law, which Patton claims governs the merits of Plaintiff's claims. *Id.*

In response, Plaintiff contends that Patton's motion should fail for two reasons. (Rec. Doc. 15, at 3.) First, Plaintiff argues that Patton's contacts with Louisiana were so continuous and systematic in nature that Patton should be considered at home in

5

Louisiana. *Id.* Plaintiff claims that Patton has managed a property in New Orleans, Louisiana, for several years, pays taxes in Louisiana, employs Louisiana residents, is registered to do business in Louisiana, has an office in Louisiana, and appointed an agent for service of process in Louisiana. *Id.* at 4.

Second, Plaintiff argues that the affidavit Patton attached to its motion should be given no weight because it does not reflect the personal knowledge of the affiant. *Id.* at 3. Plaintiff claims that Styron's deposition, taken after Styron signed the affidavit, makes clear that he lacked personal knowledge of many of the facts in the affidavit. *Id.* at 6. For example, in his affidavit, Styron indicated that Patton operated resorts in nine different states; however, Plaintiff argues that he testified in his deposition that he was not sure of the number of states in which Patton operated. *Id.* at 6-7 (citing Rec. Doc. 15-1, at 11-14). Further, Plaintiff argues that Styron did not base his assertion about the percentage of Patton's business attributable to its location in Louisiana on knowledge of the actual business revenue generated. *Id.* at 7 (citing Rec. Doc. 15-1, at 46-47). Plaintiff also argues that Styron simply assumed that no board meetings have ever been held in Louisiana. *Id.* (citing Rec. Doc. 15-1, at 48-49). Moreover, Plaintiff claims that Styron admitted at his deposition that he did not know whether the statements in his affidavit were based on his assumptions rather than his personal knowledge. *Id.*

6

**LEGAL STANDARD**

Rule 12(b)(2) of the Federal Rules of Civil Procedure permits dismissal of a suit for lack of personal jurisdiction. Where a defendant challenges personal jurisdiction, the party seeking to invoke the power of the court bears the burden of proving that jurisdiction exists. *Luv N' Care, Ltd. v. Insta-Mix, Inc.*, 438 F.3d 465, 469 (5th Cir. 2006). The plaintiff need not, however, establish jurisdiction by a preponderance of the evidence; a prima facie showing suffices. *Id.* The court must accept the plaintiff's uncontroverted allegations, and resolve all conflicts between the facts contained in the parties' affidavits and other documentation in favor of jurisdiction. *Id.*

A federal court sitting in diversity must satisfy two requirements to exercise personal jurisdiction over a nonresident defendant. *Pervasive Software Inc. v. Lexware GmbH & Co. Kg*, 688 F.3d 214, 220 (5th Cir. 2012). First, the forum state's long-arm statute must confer personal jurisdiction. Second, the exercise of jurisdiction must not exceed the boundaries of the Due Process Clause of the Fourteenth Amendment. *Id.* (citing *Mink v. AAAA Dev. LLC*, 190 F.3d 333, 335 (5th Cir. 1999)). The limits of the Louisiana long-arm statute are coextensive with constitutional due process limits. *Jackson v. Tanfoglio Giuseppe, SRL*, 615 F.3d 579, 584 (5th Cir. 2010) (citing *Walk Haydel & Assocs. v. Coastal Power Prod. Co.*, 517 F.3d 235, 242-43 (5th Cir. 2008)). Therefore, the

7

inquiry is whether jurisdiction comports with federal constitutional guarantees. *Id.*

The Due Process Clause of the Fourteenth Amendment guarantees that no federal court may assume jurisdiction *in personam* of a non-resident defendant unless the defendant has certain "minimum contacts" with the forum state such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice. *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). Sufficient minimum contacts will give rise to either specific, "case-linked" jurisdiction or general, "all-purpose" jurisdiction. *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 131 S. Ct. 2846, 2851 (2011).

Specific jurisdiction is confined to adjudication of "issues deriving from, or connected with, the very controversy that establishes jurisdiction." *Id.* In order to establish specific jurisdiction, a plaintiff must show that "(1) there are sufficient (i.e., not 'random fortuitous or attenuated') pre-litigation connections between the non-resident defendant and the forum; (2) the connection has been purposefully established by the defendant; and (3) the plaintiff's cause of action arises out of or is related to the defendant's forum contacts." *Pervasive Software*, 688 F.3d at 221; *accord Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474-76 (1985). The defendant can then defeat the exercise of specific

8

jurisdiction by showing that it would be unreasonable. *Burger King*, 471 U.S. at 476-77; *Pervasive Software*, 688 F.3d at 221-22.

General jurisdiction, on the other hand, does not require a showing of contacts out of which the cause of action arose. *Goodyear*, 131 S. Ct. at 2851. A court may assert general jurisdiction over foreign defendants "to hear any and all claims against them." *Id.* The proper consideration when determining general jurisdiction is whether the defendant's "affiliations with the State are so 'continuous and systematic' as to render [it] essentially at home in the forum State." *Daimler AG v. Bauman*, 134 S. Ct. 746, 761 (2014) (alteration in original) (quoting *Goodyear*, 131 S. Ct. at 2851).

Only a limited set of affiliations with a forum will render a defendant amenable to general jurisdiction there. *Id.* at 760. "For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile; for a corporation, it is an equivalent place, one in which the corporation is fairly regarded as at home." *Id.* (quoting *Goodyear*, 131 S. Ct. at 2853-54). With respect to a corporation, the paradigm bases for the exercise of general jurisdiction are "the place of incorporation and principal place of business." *Id.* General jurisdiction does not exist simply because of "the magnitude of the defendant's in-state contacts." *Id.* at 762 n.20. Rather, a court must appraise

9

the defendant's activities "in their entirety, nationwide and worldwide." *Id.*

## DISCUSSION

**A.  Personal Jurisdiction**

As mentioned above, Plaintiff has the burden to make a prima facie showing that personal jurisdiction is proper. *Monkton*, 768 F.3d at 431. Because this Court did not hold an evidentiary hearing, Plaintiff is required to present only a prima facie case of personal jurisdiction. *Johnston v. Multidata Sys. Int'l Corp.*, 523 F.3d 602, 609 (5th Cir. 2008). "Moreover, on a motion to dismiss for lack of jurisdiction, uncontroverted allegations in the plaintiff's complaint must be taken as true, and conflicts between the facts contained in the parties' affidavits must be resolved in the plaintiff's favor for purposes of determining whether a prima facie case for personal jurisdiction exists." *Id.* (quoting *Bullion v. Gillespie*, 895 F.2d 213, 217 (5th Cir. 1990)). However, the court "will not 'credit conclusory allegations, even if uncontroverted.'" *Sealed Appellant 1 v. Sealed Appellee 1*, No. 14-20204, 2015 WL 4880162, at *3 (5th Cir. Aug. 17, 2015) (quoting *Panda Brandywine Corp. v. Potomac Elec. Power Co.*, 253 F.3d 865, 869 (5th Cir. 2001)). Therefore, if a defendant submits affidavit evidence directly contradicting the plaintiff's jurisdictional allegations, the court "must determine whether the plaintiff[] ha[s] established a prima facie case of personal jurisdiction

10

through nonconclusory allegations supported by admissible evidence." *Id.*

In the instant case, Plaintiff contends that the allegations in his Complaint and the facts contained in Scott Styron's deposition are sufficient to establish a prima facie showing that this Court has personal jurisdiction over Patton. Plaintiff's Complaint alleges that Patton is a foreign limited liability company, "authorized to do and doing business in Louisiana," with an office located in Baton Rouge, Louisiana, and agents appointed for service of process in Baton Rouge, Louisiana. (Rec. Doc. 1, at 1.) These allegations are confirmed by the publicly available information on the official Louisiana, Nevada, and North Carolina state websites, which also shows that Patton is incorporated in Nevada and has its principal place of business in North Carolina.

In addition, Styron's deposition sets forth the following facts. Patton is engaged in hospitality management, specifically timeshare resort and hotel management services. (Rec. Doc. 15-1, at 9.) Patton manages approximately thirty properties across the United States, including one timeshare resort in New Orleans, Louisiana, which Patton has managed for more than two years. *Id.* at 9, 15-16. Patton has nine employees on staff at the Louisiana location. *Id.* at 15. Further, Styron testified that he assumes Patton pays state taxes and unemployment taxes in Louisiana. *Id.* at 21, 61. Styron also confirmed that Patton's relationship with

11

Louisiana, insofar as it manages a property located there, is continuous and not sporadic. *Id.* at 62.

Because there is no allegation that Plaintiff's claims in this lawsuit arose out of Patton's contacts with Louisiana, the Court assumes Plaintiff offers these facts in an attempt to make a prima facie case for general jurisdiction over Patton. "A corporation's 'continuous activity of some sorts within a state,' *International Shoe* instructed, 'is not enough to support the demand that the corporation be amenable to suits unrelated to that activity.'" *Goodyear*, 131 S. Ct. at 2856 (quoting *Int'l Shoe*, 326 U.S. at 318). "[T]he continuous corporate operations within a state [must be] so substantial and of such a nature as to justify suit against it on causes of action arising from dealings entirely distinct from those activities." *Int'l Shoe*, 326 U.S. at 318. Accordingly, the Court must determine whether Patton's above-mentioned affiliations with Louisiana are so "continuous and systematic" as to render Patton essentially "at home" in Louisiana. *See Daimler*, 134 S. Ct. at 754.

The Supreme Court has found a sufficient basis for general jurisdiction in only one case that postdated *International Shoe*. In *Perkins v. Benguet Consolidated Mining Co.*, the defendant, a Philippine mining corporation, ceased its mining operations during the Japanese occupation of the Philippines in World War II. 342 U.S. 437, 447-48 (1952). The company's president, who was also

12

general manager and principal stockholder of the company, returned to his home in Ohio where he carried on "a continuous and systematic supervision of the necessarily limited wartime activities of the company." *Id.* The company's files were kept in Ohio, several directors' meetings were held there, substantial accounts were maintained in Ohio banks, and all of the company's activities were directed from within Ohio. *Id.* Accordingly, the Supreme Court held that Ohio courts could exercise general jurisdiction over the company. *Id.* at 448. That was so, the Court later noted, because "Ohio was the corporation's principal, if temporary, place of business." *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 780 n.11 (1984); *see also Daimler*, 134 S. Ct. at 756 n.8 ("Given the wartime circumstances, Ohio could be considered 'a surrogate for the place of incorporation or head office.'").

In all other cases addressing the issue, the Supreme Court has held that a corporation's affiliations with a forum were insufficient to render the corporation amenable to general jurisdiction there. For example, in *Daimler AG v. Bauman*, the defendant, Daimler, was a German corporation sued in California. 134 S. Ct. at 750-51. The plaintiffs alleged that the federal district court in California could exercise general jurisdiction over Daimler because of the "substantial, continuous, and systematic" contacts in California of one of Daimler's subsidiaries. *Id.* at 761. The subsidiary was alleged to operate

13

"multiple California-based facilities" and to be "the largest supplier of luxury vehicles to the California market," and the subsidiary's California sales accounted for 2.4% of Daimler's worldwide sales. *Id.* at 752. Even assuming that the subsidiary was "at home" in California and that the subsidiary's contacts were imputable to Daimler, the Court held that there was still no basis to subject Daimler to general jurisdiction in California. *Id.* at 760. The Court stated that a formulation approving "the exercise of general jurisdiction in every State in which a corporation 'engages in a substantial, continuous, and systematic course of business'" would be "unacceptably grasping." *Id.* at 761. Moreover, the Court explained that "[a] corporation that operates in many places can scarcely be deemed at home in all of them." *Id.* at 762 n.20. In other words, "at home" is not synonymous with "doing business." *Id.*

The Fifth Circuit "has consistently imposed the high standard set by the Supreme Court when ruling on general jurisdiction issues." *Johnston*, 523 F.3d at 611. Considering the high threshold set in *Daimler*, the Fifth Circuit has stated that it is "incredibly difficult to establish general jurisdiction in a forum other than the place of incorporation or principal place of business." *Monkton Ins. Servs., Ltd. v. Ritter*, 768 F.3d 429, 432 (5th Cir. 2014).

Although the Court in *Daimler* did not "foreclose the possibility" that a corporation's operations in a forum other than

14

its formal place of incorporation or principal place of business "may be so substantial and of such a nature as to render the corporation at home in that State," the Court did state that general jurisdiction existing in a forum other than the place of incorporation or principal place of business would happen only "in an exceptional case," such as *Perkins*. *Daimler*, 134 S. Ct. at 760 n.19 (citing *Perkins*, 342 U.S. 437). This is not one of those rare situations.

Unlike the defendant in *Perkins*, whose sole wartime business activity was conducted in Ohio, Patton is in no sense "at home" in Louisiana. Louisiana is just one of the many states in which Patton manages properties. Plaintiff, who bears the burden on this motion, has not established that Patton is any more active in Louisiana than it is in any other state in which it operates. To the contrary, Patton manages only one property in Louisiana; in other states it manages as many as five or six.[1] Patton's activity in Louisiana does not come close to rising to the level of the principal place of business, the quintessential paradigm for general jurisdiction. *See Chavez v. Dole Food Co.*, 947 F. Supp. 2d 438, 443 (D. Del. 2013) ("[I]t cannot be inferred that Chiquita's ownership of a facility in Delaware, movement of its products through Delaware,

---

[1] For example, Styron testified that the state in which Patton manages the most properties is likely South Carolina, where it manages five or six properties. (Rec. Doc. 15-1, at 10-11.) In addition, Styron believed Patton manages five properties in Florida, and manages two properties in approximately five other states. *Id.*

15

and sale of its products in Delaware make Chiquita 'at home' in Delaware."). If Patton's Louisiana activities sufficed to allow adjudication of this Alabama-rooted case in Louisiana, the same national reach would presumably be available in every other state in which Patton manages a property. *See Daimler*, 134 S. Ct. at 761. However, as the Supreme Court made clear in *Daimler*, "doing business" in a state does not render a foreign company "at home" in that state. *Id.* at 762 n.20.

Thus, even when taking Plaintiff's nonconclusory allegations as true and resolving all factual conflicts in Plaintiff's favor, Patton's contacts, in their entirety, do not rise to the substantial level required to render Patton essentially at home in Louisiana.[2] Without the requisite showing on this point, Plaintiff fails to make a prima facie case for general jurisdiction over Patton. Accordingly, the Court lacks personal jurisdiction over Patton.

**B.   Transfer of Venue**

Where a court finds it lacks personal jurisdiction, it may dismiss the action pursuant to Rule 12(b)(2). In the alternative, a court is authorized under 28 U.S.C. § 1406(a) to transfer the action to "any district or division in which it could have been brought" if the court finds that it is "in the interest of justice"

---

[2] Because Plaintiff fails to make a prima facie case even without considering the affidavit submitted by Patton, the Court need not consider whether the affidavit is based on sufficient personal knowledge to be admissible.

16

to transfer the action. 28 U.S.C. § 1406(a). Section 1406(a) allows a transfer where the first forum chosen is improper due to the existence of some obstacle to adjudication on the merits. *Herman v. Cataphora, Inc.*, 730 F.3d 460, 466 (5th Cir. 2013). Specifically, section 1406(a) refers to "laying venue in the wrong division or district." The Fifth Circuit has explained, however, that a division or district may be "wrong" under section 1406(a) when the original court lacks personal jurisdiction. *Id.* Thus, upon finding that it lacks personal jurisdiction, a court may transfer the case pursuant to section 1406(a) if a transfer is appropriate in the interest of justice. *Id.*

The Court finds that this action should be transferred to the United States District Court for the Southern District of Alabama. As mentioned previously, Patton moves in the alternative for the Court to transfer this action to the Southern District of Alabama, and Plaintiff consents to the transfer in the event that this Court lacks personal jurisdiction over Patton. From a review of Plaintiff's Complaint, it appears that "a substantial part of the events or omissions giving rise to the claim occurred" in the Southern District of Alabama. 28 U.S.C. § 1391(b)(2). Therefore, it is likely that the Southern District of Alabama is a district "in which [this case] could have been brought." *Id.* § 1406(a). Moreover, Patton's motion sets forth several reasons why the Southern District of Alabama is an appropriate forum for this

17

lawsuit. Thus, it would be in the interest of justice to transfer this case to the Southern District of Alabama.

## CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that Defendant's *Motion to Dismiss on Grounds of Lack of Personal Jurisdiction and Improper Venue, or Alternatively to Transfer This Civil Action on Grounds of Forum Non Conveniens* **(Rec. Doc. 4)** is **GRANTED**.

**IT IS FURTHER ORDERED** that Defendant's *Motion to Reset Hearing on Patton's Motion to Dismiss on Grounds of Lack of Personal Jurisdiction and Improper Venue, or Alternatively to Transfer This Civil Action on Grounds of Forum Non Conveniens, and Request for Court to Take Judicial Notice of Adjudicative Facts* **(Rec. Doc. 13)** is **GRANTED**.

**IT IS FURTHER ORDERED** that the above-captioned matter is hereby **TRANSFERRED** to the United States District Court for the Southern District of Alabama.

New Orleans, Louisiana, this 26th day of February, 2016.

_____
CARL J. BARBIER
UNITED STATES DISTRICT JUDGE